# THE SUPREME COURT

### OF

## THE STATE OF MISSOURI,

### MARCH TERM, 1871, AT ST. LOUIS.

#### [CONTINUED FROM VOL. XLVII.]

————————

THE STATE OF MISSOURI *ex rel.* CHARLES E. DUNN, Relator, *v.* STEPHEN D. BARLOW, Respondent.

1. *St. Louis, city of—Ordinances concerning contracts for lighting, etc., the street lamps, how construed.*—Section 1, article VI (p. 342), of the Revised Ordinances of the city of St. Louis (Revision of 1866), which provides that "The city engineer is hereby authorized to contract in the same manner as for other city work, for the cleaning, lighting and repairing of the public street lamps," refers back to section 5, article I, of ordinance 5399 (Revision of 1866, p. 320), which provides that "all public works ordered by the city, unless otherwise directed, shall be let by the city engineer to the lowest and best bidder," and provides the modes of advertising, making specifications and receiving bids. And a contract made without compliance with these provisions is invalid.

2. *St. Louis, city of—Ordinance concerning contracts for lighting street lamps, how affected by amended charter.*—The amended charter of the city of St. Louis, adopted March 4, 1870, provides by law for the mode of letting public work. Section 17, article VIII, of said charter forbids the city council from making contracts directly for public work, etc., and directs the city engineer to prepare plans, profiles and estimates, and, under the direction of ordinances, to advertise for bids and let the work by contract to the lowest

2—VOL. XLVIII.

and best bidder. After the adoption of this charter, the provisions of the ordinance requiring the engineer to contract for lighting the public street lamps in the same manner as for other city work, although adopted before the passage of the amended charter, can have reference only to the mode provided in such amended charter.

## Petition for Mandamus.

*S. Reber,* for respondent.

I. The ordinance establishing and regulating the engineer department, approved by the mayor August 5, 1864, fifth section, article I, ordained that all public works ordered by the city, unless otherwise directed, shall be let by the city engineer to the lowest and best bidder, and that notice of the letting out of such work should be publicly given. By section 1 of article VI of ordinance No. 5399, it is ordained that " the city engineer is hereby authorized and instructed to contract in the same manner as for other city work, for the cleaning, lighting and repairing of the public street lamps for the term of one year ; and the said work shall be re-let annually thereafter, unless otherwise ordered by the committee on gasworks. The lighting, cleaning and repairing shall each be let separately, if it shall be the interest of the city to do so, and the price shall be for each item."

II. The act, approved March 4, 1870, entitled "An act to revise the charter of the city of St. Louis and to extend the limits thereof," provides that the city council shall have no power directly to contract for any public work or improvements, or repairs thereof, contemplated by this charter, nor to fix the price or rate therefor ; but the city engineer shall in all cases, except in cases of necessary repairs, prepare and submit to the council plans, profiles and estimates of the cost of any proposed work ; and, under the direction of ordinance, shall advertise for bids and let out said work, by contract, to the lowest and best bidder, subject to the approval of the council. The alleged agreement, entered into on the 3d of January, 1871, by F. Bischoff, city engineer, for the extension of said contract No. 1402 until the 1st day of March, 1872, was made without any authority either in the laws of the State or ordinances of the city of St. Louis,

and without any lawful authority whatever, and the same is therefore null and void. The engineer had no authority to contract with said Dunn or any other person for lighting, cleaning and repairing the public street lamps in the city except by complying with the provisions of said fifth section of article 1 of said ordinance 5399, above recited, and by letting the said work to the lowest and best bidder, all which said engineer failed and omitted to do.

*Glover & Shepley,* and *Donahue,* for relator.

I. If the contract made with Mr. Dunn was valid, it was the duty of the comptroller to countersign it.

II. The contract made with Mr. Dunn was prepared by the city engineer in proper form, signed by Mr. Dunn and his sureties, submitted to the council for their approval, and approved by them ; and the action of the city engineer in the premises was in conformity with instructions emanating from the committee on gasworks. These facts make the agreement with Mr. Dunn a valid contract under the city charter and ordinances. The meaning of section 17, article VIII, amended charter, approved March 4, 1870, is obvious : 1. The council shall not contract directly, but may contract indirectly, for work indicated in that section, after plans, profiles and estimates, advertisements and bids approved by the council. 2. But no work, improvement or repairs mentioned in that section is to be let out after advertisement and bids unless it be of nature to admit of plans, profiles and estimates of costs. That is perfectly clear. Section 18 enforces the same view wherein it says every ordinance requiring such work shall contain a specific appropriation from the proper revenue or fund, based on an estimate of cost, etc. Now, what is meant by such work ? Evidently that of which profiles and plans may be made and submitted—that previously mentioned, streets, alleys, wharves, sewers, etc.

BLISS, Judge, delivered the opinion of the court.

The relator asks for a *mandamus* upon defendant as city comptroller of the city of St. Louis, commanding him to coun-

tersign a certain contract for lighting, cleaning and repairing the street lamps of the city, claimed to have been entered into between him and the city, and which the comptroller refuses to countersign although required to do so by law. Contrary to our usual requirement that such proceedings shall be commenced in the Circuit Court, we have allowed the original writ for the reason that a pressing public necessity requires an immediate decision as to who shall be employed and paid for this important public work, lest a double liability be incurred or the streets fail to be lighted.

The petition shows that in May, 1865, the city made a contract with one Henry as principal, for lighting, extinguishing, cleaning and repairing the public street lamps for one year from date; that by consent of the city council the contract was transferred to the relator Dunn; that it was renewed from year to year in favor of the relator, the last renewal being on the 3d of January, 1871. The petition sets out in full the original contract, and the following is the form of the last renewal: " City Engineer's Office, St. Louis, Jan. 3, 1871. The time specified for the expiration of this contract (No. 1402 continued) is hereby extended until the 1st day of March, A. D. 1872, in accordance with a resolution passed by the Honorable Committee on Gaslight of the city council of St. Louis on the 3d day of January, 1871; all other stipulations of said contract to be and remain in force." The extension was signed by the relator and by the city by F. Bischoff, city engineer; was assented to by the sureties, its formality was certified by the city counselor, and the mayor approved the securities. The petition charges that, subsequent to the agreement with the relator by said extension, the city entered into a contract for the same work with one Henry F. Zider; that the defendant, who is the comptroller, having countersigned said Zider's contract, refuses to countersign the contract of extension with the relator as he is required to do by the city charter, and asks for a peremptory *mandamus*, etc.

The facts set out in the petition are admitted by the defendant, but in his return to the writ he gives as the reason why he refuses to countersign the relator's contract, that it was illegal and void as not having been made in conformity with the city ordinances

The State of Missouri ex rel. Dunn, relator, v. Barlow.

and charter. He refers especially to ordinance No. 5399, establishing and regulating the engineer department.(Revision of 1866, p. 315), to justify his refusal, and to the amended charter of March 4, 1870. Section 5, article I, of that ordinance (p. 320) provides that " all public works ordered by the city, unless otherwise directed, shall be let by the city engineer to the lowest and best bidder ;" and the mode of advertising, making specifications and receiving bids is provided for. Section 1, article VI (p. 342) says : " The city engineer is hereby authorized and instructed to contract, in the same manner as for *other city work*, for the cleaning, lighting and repairing of the public street lamps," etc. If this last provision refers back to the public works provided for in article I, above quoted, so as to require the work of lighting, etc., the public street lamps to be let to the lowest and best bidder, then it is admitted that the relator's contract was not made according to law, and is not obligatory. Does, then, the term " city work," in the section last quoted, refer to " public work ordered by the city" first spoken of? In said section 8, article I, of the ordinance, we have a general direction to the city engineer to let out all public works to the lowest and best bidder. If this were all, there might be reasonable doubt whether it did not refer to making original improvements, such as grading, curbing, macadamizing, building sewers, etc. It might not be supposed that a work like the lighting, etc., of the street lamps was intended to be included within it. But to remove all ambiguity and doubt as to the intention of the council, when the subject of street lamps is considered, in article VI, the engineer is expressly authorized to contract for their cleaning, lighting and repairing, and " in the same manner as for other city work." All the contracts for city work that had been provided for were the " public works ordered by the city," and they are the " other city work " referred to, for there is nothing else to which reference can be had. The argument founded on the difference in the phraseology is a mere verbal criticism. Section 12 of article VI, concerning sewers, where the mode of making the contract by letting is undoubted, also refers back to these public works as " other city work," and the intention of the ordinance cannot

be mistaken. Had different modes of letting public works by contract been provided for — one class to be let to the lowest bidder and another class to be let at the discretion of the engineer, without competition — then the significance of this direction would be lost, and he would doubtless be at liberty to make the contract either way. But there is but one mode provided in the ordinance for such general work as is capable of estimate and computation, and the requirement upon the engineer is imperative to conform to that mode.

The amended charter of March 4, 1870, provides by law for the mode of letting public work. Section 17 of article VIII, concerning public improvements, prohibits the city council from making contracts directly for public works, improvements, etc., and directs the engineer to submit plans, profiles and estimates, etc., and, under direction of the ordinance, to advertise for bids and let the work by contract to the lowest and best bidder. This amended charter was in force when the extension was made of the lamp-lighting contract, of which the relator seeks to avail himself; and hence the provision in the ordinance requiring the engineer to contract for lighting the lamps in the same manner as for other city work, although adopted before the passage of the amended charter, can have reference only to the mode provided in such amended charter. That mode is substantially the same as was before provided, only it has now the force of a statute.

Counsel claims that this law cannot be complied with in a work like that under consideration, because the engineer cannot submit "plans, profiles and estimates of cost," etc. But they mistake entirely the scope of the ordinance. It only requires the contract to be made in the *same manner*, etc. The spirit of the ordinance and the act must be followed. Specifications, of course, must be prepared, for there can be no contract without them. They must be adapted to the nature of the work and submitted to the bidders. It is not necessary to hold that said section 17 itself provides for letting out the lighting and cleaning of lamps; it need do nothing of the kind, and still the ordinance in relation to lamp-lighting may refer to works provided for by that section,

and to the mode of letting them, as a guide in making contracts pertaining to such lighting, and this is all it purports to do.

The relator moves to quash the return for insufficiency. The return showing the relator's contract to be illegal and void, the motion is overruled and judgment is given for respondent. The other judges concur.