---

(64 Misc. Rep. 130.)

GRACE v. FOBES, Mayor, et al.

(Supreme Court, Special Term, Onondaga County. July, 1909.)

1. MUNICIPAL CORPORATIONS (§ 330*)—CONTRACTS—COMPETITION.

Laws 1909, c. 55 (Consol. Laws, c. 53) § 120, requiring an opportunity for competition in bidding on municipal contracts, is violated in spirit, where such opportunity is given in form only, and not in fact.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 854, 855; Dec. Dig. § 330.*]

2. MUNICIPAL CORPORATIONS (§ 330*)—CONTRACTS—COMPETITION.

Where specifications for a central office fire alarm system were so drawn as to confine all possibility of bidding to one company, though there was at least one other engaged in the same business, there was an utter failure to comply with Laws 1909, c. 55 (Consol. Laws, c. 53) § 120, requiring an opportunity for competition in bidding on municipal contracts, and a contract let to such company is void.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 330.*]

3. MUNICIPAL CORPORATIONS (§ 1000*)—CONTRACTS—COMPETITION.

The fact that competitive bidding on a municipal contract as required by statute is prevented is in itself presumptive evidence of injury to taxpayers.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 1000.*]

4. MUNICIPAL CORPORATIONS (§ 993*)—CONTRACTS—COMPETITION—RELIEF OF TAXPAYER.

Where, in a taxpayer's action to restrain performance of a municipal contract, he shows illegal action by the municipality, he is entitled to the assistance of the court, and it is immaterial that the person really interested is a competitor of the company to whom the contract has been let.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 993.*]

Action by William J. Grace against Allen C. Fobes, as Mayor of the City of Syracuse, and others to restrain the performance of a contract for the installation of a central office fire alarm system. Temporary injunction granted.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

J. H. Walrath (E. N. Wilson, of counsel), for the motion.

Walter W. Magee, Corp. Counsel (T. E. Hancock, of counsel), opposed.

ANDREWS, J. The plaintiff in this action, although not a resident, is a taxpayer of the city of Syracuse, assessed for purposes of taxation in said city upon real estate owned by him in an amount exceeding $1,000. The city of Syracuse is a municipal corporation of the state of New York, being a city of the second class. The Gamewell Fire Alarm Telegraph Company is a corporation engaged in the business of manufacturing and installing fire alarm telegraph systems. Mr. Fobes and the other defendants are officers of the city. On April 27, 1909, the board of contract and supply of the city advertised that sealed bids or proposals would be received by it for furnishing a fire alarm central office equipment in accordance with the plans and specifications on file in the office of the commissioner of public safety. This advertisement was made pursuant to the requirement of section 120 of chapter 53 of the Consolidated Laws (Laws 1909, c. 55), which provides, among other things, that all contracts for the performance of any work or the supply of any material required for the use of any officer, board, body, or department of the city, in all cases where the expense of such work or materials, or both, shall exceed the sum of $250, shall be let to the lowest bidder, who shall give adequate security therefor, after public notice and in accordance with the regulations to be prescribed by the common council, unless by ordinance of the common council, unanimously adopted, and unanimously approved by the board of estimate and apportionment, it is deemed to be impracticable to procure such work or materials, or both, by contract. Specifications for the performance of any work and the supply of any materials must be prepared, which shall set forth with sufficient detail to inform all persons proposing to bid therefor of the nature of the work to be done and of the materials to be supplied. Specifications had been drawn up, and, May 10, 1909, a bid from the Gamewell Fire Alarm Telegraph Company having been received, and being the only bid, a contract was awarded to it by the board of contract and supply for the sum of $42,450, and on the next day the contract itself was signed. It appears that there is at least one other corporation engaged in the business of making and installing central office fire alarm equipments.

The claim of the plaintiff is that the specifications in question were so drawn as to evade the provisions of the statute requiring a work of this magnitude to be let to the lowest bidder, unless the common council and board of estimate and apportionment are unanimously of the opinion that it is impracticable to procure the same by contract. It is impossible to read these specifications as prepared by the city officers without reaching the conclusion that under them all possibility of bidding was confined to the Gamewell Company. They provide that sealed proposals shall be received by the board of contract and supply for the manufacture, delivery, and installation of relay boards, switchboards, recording, transmitting, and other apparatus, etc., comprising a complete fire alarm telegraph central office equipment necessary for the

operation of the fire alarm telegraph system of the city of Syracuse. The successful bidder is required to furnish at the time the contract is entered into a bond in large amount to indemnify the city from all claims against it, on account of any of the materials or fixtures used about the work being infringements or claimed infringements of any patent. If any bidder does not fully understand the specifications, or is in doubt as to the idea or intentions concerning the same, he must satisfy himself by inquiring of the commissioner of public safety before bidding, as he will be held rigidly to the commissioner's interpretation of the specifications after the contract is drawn. Only such bids as cover all of the apparatus, material, and work called for under the specifications will be entertained. All bidders must furnish with their bids detailed specifications of the equipment which they propose to furnish, and shall also submit photographs of at least two fire alarm telegraph central office equipments similar to and equivalent in functions to the one specified herein. With their bids bidders shall furnish samples of the following apparatus called for in the specifications, and built or supplied by them. These samples are to show the character, extent, design, finish, etc., the bidder proposes to furnish. And here follow 21 different items of apparatus, such as "switches described for the main line relay boards," "enunciator sets described for main line relay boards," "line key described for main line relay boards."

It is intended that the bids received under these specifications shall provide for the city of Syracuse an automatic, semiautomatic, and manual fire alarm telegraph central office equipment, with all necessary appliances and apparatus of the most approved, efficient, and reliable type; and bids will not receive consideration unless they comply in every detail with this requirement and with the specifications hereto annexed. Then follows a general statement of what the equipment, material, and work shall consist of. Next come what are called the detailed specifications, such as that each main line relay board "shall be four feet seven inches wide by five feet four inches high, and not less than one inch thick." "Each circuit shall be provided with a detachable box list frame fifteen inches high and two and three-fourths inches wide, made of cast composition and buff finish." "Each main line relay board is to be provided with a gang rod. This gang rod shall be manually operated through rack and pinion by a composition brass crank with figured face and a mottled rubber handle." "The switch arms shall be grain finished and the link bars and knobs shall be of mottled rubber finished true and properly polished." "Each row of switches shall have a name plate, and 'said plates shall be of composition brass, the letters and borders being raised and grain finished and the background pebbled and silvered.'" Each circuit shall be provided with a list tube, and "the tube shall consist of glass of the purest transparent quality $2\frac{1}{2}$ inches in outside diameter and $\frac{1}{8}$ inch thick." The dome over the receptacle "shall be highly finished composition bronze of Moorish design." "The polar relays shall each be mounted on a composition bronze base, handsomely molded, measuring 5 inches long, $3\frac{1}{4}$ inches wide, and not less than $\frac{1}{2}$ inch thick." "There shall be (1) 8-circuit gong line board, built of slate and brass. The board shall

be 4 inches wide by 5 feet 4 inches high, and the slate shall be not less than ⅛ inch thick.".

In quoting these detailed specifications, or in referring to many similar ones which might be quoted, I do not mean to say that the board of contract and supply had not the perfect right, if it thought it wise to do so for any reason, to provide that one shelf should be exactly 5 inches wide, instead of 5½, or 3 feet from the floor, and not 3 feet 2 inches; that the handle of a certain rod should be mottled, and not black, rubber; that cast composition with a buff finish should be used in one place, yellow brass in another, composition brass here, and composition bronze of Moorish design there. Only it does not seem to be seriously disputed but that these detailed specifications in every case exactly correspond to the apparatus furnished by the Gamewell Company, and, therefore, these facts may have some bearing upon the object with which certain other requirements, to which I shall now refer, were adopted. There are to be four 10-circuit automatic storage battery controlling switchboards, and their functions are described. Then follows the clause:

"All of the above functions to be performed in the manner described below by the following apparatus."

Then follows a number of descriptions of apparatus, of which the following two paragraphs are fair examples:

"A pair of knife switches for charging circuit capable of being opened by means of a tripper device, said tripper device having a plunger rod with spring power sufficient to open said knife switch when said knife switch is closed, the plunger is pushed in and locked in that position, and subject to tripper magnet action for release, while the tripper magnet is subject to co-operation of cut-outs and polar relays to be described later. It is also subject to overland currents."

"There shall be one rheostat, with three resistance lamps for each circuit of batteries to be charged, and two series of contacts, some of which are single contacts and others double contacts, having a movable two-armed switch, one arm of which is insulated from the other arm and co-operates with one series of contacts, while the other arm co-operates with the other series of contacts, the contact so wired to the three lamps that there may be had seven different resistances from these lamps."

Finally, it is said that:

"The switchboards and instruments heretofore described shall be contained in and supported by a handsome metallic pedestal."

These specifications last referred to seem to be taken directly from specifications of patents obtained on their apparatus by the Gamewell Company and still valid and in force. Concededly no person other than the Gamewell Company could, without its consent, manufacture or sell the knife switches, or the rheostats described, or many of the other appliances and instruments.

It is claimed by the defendants that the specifications do not intend to require, and do not require, that the precise instruments therein described shall be supplied; that other instruments or appliances, having equivalent functions and producing the same results, could be furnished; and that, when furnished, the contract would be complied with. In my opinion the specifications are not open to such a liberal construction. The only bids to be considered are such as cover all apparatus, material, and work "called for under these specifications,"

bidders are to furnish samples of articles described, bids "must comply in every detail with the plans and specifications annexed," the functions of the switchboards "are to be performed in the manner described below by the following apparatus," and "the switchboards and instruments heretofore described" are to be contained in certain cabinets. There can be no doubt, I think, that a bidder who failed to offer the pair of knife switches, or the rheostat, or any of the patented articles described, would fail to make a bid entitled to consideration, but one which could be rejected upon that ground.

If I am right in my construction of the specifications, if, in fact, they limit the opportunity for bidding to the Gamewell Company, they fail utterly to comply with the statute. The statute requires an opportunity for competition; and, where this opportunity is given in form only, and not in fact, its spirit is violated. The statutes which require public works to be let by contract and to the lowest bidder are enacted in the public interests. They are a bar against fraud, and they should receive from the courts the most liberal and fair interpretation. Such a provision is—

"based upon motives of public economy, and originated, perhaps, in some degree of distrust of the officers to whom the duty of making contracts for the public service was committed. If executed according to its intention, it will preclude favoritism, and jobbing, and such was its obvious purpose." Brady v. Mayor, 20 N. Y. 312.

"This provision [as to the lowest bidder] was inserted in the charter undoubtedly to prevent favoritism, corruption, extravagance, and improvidence in the procurement of work and supplies for the city, and it should be so administered and construed as fairly and reasonably to accomplish this purpose." People ex rel. Coughlin v. Gleason, 121 N. Y. 631, 25 N. E. 4.

In Smith v. Syracuse Improvement Co., 161 N. Y. 484, 55 N. E. 1077, bids were received for paving a street "with vitrified paving brick, manufactured by the New York Brick & Paving Company, of Syracuse, N. Y." The Court of Appeals approves the conclusion reached by the trial judge that this proceeding was void:

"The reasoning is that, while competition was to a certain extent allowed in this case, namely, as to the work required in paving the street, it was not allowed to the extent required by the statute, which contemplates a full and free competition in all things, inasmuch as competition in the price of paving brick was sought to be prevented. This proceeding contemplated that this should be accomplished by requiring that the street be paved with 'vitrified paving brick manufactured by the New York Brick & Paving Company, of Syracuse, N. Y.,' thus necessarily allowing that corporation to practically fix its own price for brick to be used in the work, and this, too, in the presence of the well-known fact that there were many corporations in the country engaged in the manufacture of vitrified paving brick as suitable for the work as was that of the New York Brick & Paving Company."

In Gage v. City of New York, 110 App. Div. 403, 97 N. Y. Supp. 157, it is said:

"The courts have, however, held that plans and specifications of sufficient definiteness to require competition on every material item are required, and must state the quantity of work required as definitely as is practicable. * * * Definite plans and specifications are necessary to insure the economical performance of the work by getting the best results from competitive bidding."

It is argued by the defendants that a bidder who is in doubt as to the meaning of the specifications may satisfy himself by inquiry of

the commissioner of public safety, that he will be held rigidly to the commissioner's interpretation of the specifications, that the commissioner notified intending bidders that they might supply their own apparatus, and that, consequently, a fair opportunity for competition was in fact given. But, if the specifications have the meaning that I have suggested, I do not understand that under such a clause the commissioner may place another interpretation upon them; that he or the board of contract and supply, or both together, may say to a bidder:

"The specifications require this or that instrument. You may bid, however, on the understanding that an equivalent instrument will be received."

I do not understand that any such action on his part or their part is in compliance with the statute, which requires specifications to be prepared open to all bidders and sufficiently detailed to permit all bidders to make their estimates intelligently. Involved in the whole scheme provided by the statute is the rule that the proposals called for are proposals for furnishing certain specific materials and doing certain specific labor in accordance with the specifications which have been prepared. In other words, the board of contract and supply must decide what work it wishes done and how it wishes it done before it calls for bids.

If this is to be anything more than a farce, if competition is what is desired, if a comparison of bids is to be made, all the bids must be for the same thing. If A. offers to lay a floor with pine, B. with oak, and C. with chestnut, there is no basis laid for a proper decision as to the lowest bid. In other words, the spirit of the statute requires that the plan of the work to be done be adopted before proposals are invited to the end that all bids may be for the same thing, and that nothing may remain to be determined by the board but the question as to which figures are the lowest. The statute implies a common standard by which bidders are to be measured. It implies plans previously adopted, which are to be open to all. It implies a chance to bid for a contract which is to be adopted; not that a contract may be adopted, after bids are in, and in view of them. Boon v. City of Utica, 4 Misc. Rep. 584, 25 N. Y. Supp. 846; People v. Board of Improvement, 43 N. Y. 227; Mazet v. City of Pittsburgh, 137 Pa. 548, 20 Atl. 693; State v. Barlow, 48 Mo. 17; People v. Commissioners, 4 Neb. 150; Coggeshall v. City of Des Moines, 78 Iowa, 235, 41 N. W. 617, 42 N. W. 650; Kneeland v. Furlong, 20 Wis. 437; People ex rel. Trundy v. Van Nort, 65 Barb. 331, 15 Am. & Eng. Ency. of Law, 1093; Gage v. City of New York, 110 App. Div. 403, 97 N. Y. Supp. 157.

In People ex rel. Trundy v. Van Nort, supra, it is said:

"The Croton board * * * had no right to award a contract which had been made upon proposals to do the work in a different way than that which was contemplated when the notice was published."

I must hold, therefore, that the contract between the city of Syracuse and the Gamewell Company is illegal and void.

The defendants claim that the plaintiff is not injured thereby, that the sum bid by the Gamewell Company is fair in amount, that the Gamewell apparatus is the best in the market, and that this action cannot be maintained unless some specific injury is shown. I do not

so understand the law. Where a statute requires purchases to be made by competitive bidding, the fact that such bidding is prevented is in itself presumptive evidence of injury to the taxpayers. The statute is made for their protection. It is upon the theory that competitive bidding will reduce prices; and, where they are deprived of this intended protection, they have a right to resort to the courts for relief. Boon v. City of Utica, 5 Misc. Rep. 391, 26 N. Y. Supp. 932; Matter of Petition of Emigrant Industrial Sav. Bank, 75 N. Y. 388, 396; Queens County Water Co. v. Monroe, 83 App. Div. 105, 82 N. Y. Supp. 610.

It is also said that this action is not brought in good faith; that the person really interested is a competitor of the Gamewell Company. If so, it is immaterial. The plaintiff is in fact a taxpayer. If in this action he shows illegal action on the part of the city, he is entitled to the assistance of the court, although he may have been induced to bring it by some private grievance. Gage v. City of New York, 110 App. Div. 403, 97 N. Y. Supp. 157.

In reaching this conclusion I do not cast any reflection upon the good faith of the city officials whose action resulted in the contract here held void. It appears from the evidence that the Gamewell Company is the largest manufacturer of this kind of apparatus in the United States; and I am convinced that the head of the fire department, the commissioner of public safety, and the board of contract and supply believed in good faith that the Gamewell Company's apparatus was the best and most efficient that could be had, and that the true interests of the city required that the contract should be given to it. It is, of course, a matter of primary importance that a fire alarm system should be accurate and permanent. But the statute stands in the way of any such action as was here taken. This decision is as to the effect of the rule which governs, not only their action, but that of their successors. If these specifications can be sustained, the wholesome provisions of the statute may be easily avoided. The door is opened to collusion and fraud. Whatever inconvenience may result in the present case, it is much less than would result from a contrary decision.

There is, under the statute, but one way of avoiding competitive bidding. It may be that it is impossible to obtain a unanimous consent of the common council and of the board of estimate and apportionment to such a proposition. If so, there are but two remedies: An amendment of the statute by the Legislature, or such a thorough and efficient inspection of the work before it is completed as will satisfactorily show that it is in all respects perfect.

The motion for a temporary injunction is granted, with $10 costs.

Motion granted, with $10 costs.