## GAGE v. CONNERS, Mayor, et al.

(Supreme Court, Appellate Division, Fourth Department. January 11, 1911.)

1. ELECTRICITY (§ 4*)—GRANT OF FRANCHISES—SALE TO HIGHEST BIDDER.

Fulton City Charter (Laws 1902, c. 63) § 282, prohibits the grant of any franchise to use the streets, etc., except on payment of a sufficient compensation, but permits the board of public works to fix a fair compensation for any franchise applied for, and the common council to sell such franchise, at the time and place specified in a public notice, at public sale, to the highest bidder, for a sum not less than that fixed by the board. A proposed franchise, advertised for sale to the highest bidder, required the grantee to deliver "Niagara power, so called, because of being originally generated at Niagara Falls, at the city line" of the city of Fulton, within one week after the sale of the franchise, and to supply it within the city within a reasonable time after application shall be made, within three months after the granting of permission to exercise the franchise by the public service commission, and gave the purchaser 30 days within which to apply to that commission for permission to ex-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

126 N.Y.S.—66

ercise the franchise. The N. Power Company, which petitioned for the franchise when the sale was advertised, had entered into a contract with another company, which controlled the distribution of electricity generated by "Niagara power," which contract gave the N. Company the exclusive right to furnish electricity so generated in the territory wherein both of them are located, so that no other person or company could furnish such power. There was abundant water power much nearer to Fulton than Niagara Falls from which the "Niagara power" is generated. *Held*, that the sale of the franchise to the N. Power Company was invalid, because the terms of the proposed franchise prohibited competitive bidding therefor.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 4.*]

2. EVIDENCE (§ 10*)—JUDICIAL NOTICE.
The Supreme Court will take judicial notice of the fact that there is abundant water power much nearer the city of Fulton than Niagara Falls from which may be generated sufficient electricity to supply the city.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 9–14; Dec. Dig. § 10.*]

Appeal from Special Term, Oswego County.

Suit by Frederick A. Gage against Joseph H. Conners, as Mayor of the City of Fulton, N. Y., and others, to enjoin defendants from selling a franchise. From an order setting aside a temporary injunction, plaintiff appeals. Reversed, and injunction reinstated.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles L. Stone, for appellant.

George M. Fanning, for respondents.

McLENNAN, P. J. Only a question of law is presented by this appeal, the material facts not being controverted, and they cannot be changed in any essential particular upon the trial of the action. In March, 1910, application in writing was made to the common council of the city of Fulton by the Niagara-Oswego Power Company for a franchise to supply electricity within said city for light, heat, power, etc., and for that purpose to construct, maintain, and operate the necessary poles, towers, wires, cables, and other structures in, through, upon, under, and over the streets and public places of said city. Thereafter and on the 3d day of May, 1910, the common council by resolution determined to grant such application, and a form of franchise was agreed upon and adopted. Thereafter and on the 24th day of May the common council adopted a resolution by which the board of public works of the city was requested to fix a price for less than which said franchise should not be sold, and that such franchise be sold at public auction to the highest bidder on the 17th day of June, 1910, and that such sale be duly advertised. Thereafter and on the 31st day of May, 1910, the board of public works of said city fixed the sum of $2,000 as the sum for less than which said franchise should not be sold, and thereafter said common council caused to be published in two newspapers a notice that said franchise would be sold at public auction on the 17th day of June, 1910, as above stated.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Chapter 63 of the Laws of 1902 constitutes the charter of the city of Fulton, and section 282 thereof provides as follows:

"No franchise for the use of the streets, highways, bridges, alleys, parks or public places of the city, shall be granted to any person, company or corporation for any purpose whatever, except upon payment to the city of a sufficient compensation therefor. Provided it shall be determined to grant such franchise, the board of public works shall fix the sum which in its judgment is a fair compensation to the city for any franchise applied for, and the common council shall for two weeks publish a notice of said sale in the official or other papers, giving the price fixed by the board, and shall sell said franchise at the time and place specified in said notice, at public sale to the highest bidder, but for a sum not less than the sum fixed by the board of public works therefor, except by a unanimous vote of the common council. Any sum received for such franchise shall be placed to the credit of the improvement fund."

It is claimed on behalf of the appellant that the proposed franchise adopted by the defendant common council and which was advertised for sale is so drawn and worded that there can be no competition in bidding for the same on the public sale thereof because said franchise is so drawn that it can be used and operated under and its conditions complied with by only one corporation, to wit, the Niagara-Oswego Power Company, which made the application for the same.

The eleventh paragraph of such proposed franchise provides:

"The said grantee, its successors and assigns, shall deliver Niagara power, so called, because of being originally generated at Niagara Falls at the city line of the city of Fulton (such electric power to be delivered at three-phase twenty-five cycles), within one week after the selling of this franchise, and shall supply the same within said city to applicants therefor for lighting and power purposes within a reasonable time after application therefor shall be made, to the extent of at least one thousand horse power, within three months after the granting of permission and consent to exercise this franchise by the Public Service Commission of the Second District of the state of New York, and the said grantee shall at the time set for the delivery thereof and payment therefor deliver to the city of Fulton a bond with sufficient surety to be approved by the city attorney or the common council in the penal sum of ten thousand dollars conditioned that such electricity (so-called Niagara power) shall be so delivered as hereinbefore in this paragraph provided."

It is alleged in the complaint, in substance, and is not denied, that the Niagara-Oswego Power Company, which petitioned the city of Fulton for the franchise in question, has entered into a binding and valid contract (which is now in force) with the company or corporation which controls the distribution of electricity generated by the "Niagara" power, so called, by virtue of which contract said Niagara-Oswego Power Company has the exclusive right to furnish electricity, so generated, in the county of Oswego and in the territory where the city of Fulton is located, and that because of such contract no individual, company, or corporation other than the Niagara-Oswego Power Company can furnish to the city of Fulton electricity generated by "Niagara" power, as required by paragraph 11 of the proposed franchise.

It is also alleged in the moving papers, in substance, and is not denied, that it would be impossible for any individual, company, or corporation other than the Niagara-Oswego Power Company to deliver

to the city line electricity generated by "Niagara" power within one week after the selling of the proposed franchise, as provided therein. That the Niagara-Oswego Power Company is alone in position to comply with this provision of the proposed franchise appears by the affidavit of John Brannan, read in opposition to the motion, which states, in substance, that the Niagara-Oswego Power Company had at the time the application for the franchise was presented a line of poles erected and wires strung which conducted electricity generated by "Niagara" power to his mill and practically to the city line and could be readily utilized as a means of complying with that requirement of the proposed franchise.

It is thus evident and is practically conceded by respondent that there could be no competition for the purchase of the proposed franchise; that there could be only one genuine bidder for the same, the Niagara-Oswego Power Company; that all others were effectively eliminated by the express terms of the proposed franchise.

May this be done in view of the provisions of the charter to which attention has been called and which directs that the city officials "shall sell said franchise at the time and place specified in said notice at public sale to the highest bidder"? If the franchise offered for sale is so worded that there can be but one bidder, then the charter provision is nugatory, and the money expended in advertising the sale is worse than wasted.

There is no legitimate reason disclosed by the record why "Niagara" power should be specified in the franchise as the exclusive power which should generate electricity for the city of Fulton. We may take judicial notice of the fact that there is an abundance of water power much nearer to the city than Niagara Falls and amply sufficient to supply all the electricity such city may require. Whether or not any of such water powers can be acquired and utilized for such purpose we do not know; but why select one 175 miles distant and eliminate all others?

Again, electricity may be generated by the use of coal. Indeed, it is thus generated in some of the largest manufacturing plants in the country. Why should that means of furnishing electricity to the city of Fulton be barred?

There is no reason why the proposed franchise should require that electricity should be delivered at the city line "within one week after the selling of the franchise," because by the terms of such franchise the purchaser is not required to furnish electricity to the inhabitants or for the purposes of the city within one week. Indeed, it is expressly provided that such purchaser may have 30 days in which to apply to the Public Service Commission for permission to exercise such franchise (paragraph 16 of the franchise), and in case such permission is obtained then the purchaser has three months from the time of obtaining such permission before it is required to serve the city or its inhabitants with electricity (paragraph 11 of franchise).

The provision in the proposed franchise requiring the purchaser to bring electricity to the city line within one week after the granting of the same is of no possible use to the city or its inhabitants, because the purchaser of such franchise under its other provisions might have

six months or even longer before it could be required to furnish electricity within the city. It was given 30 days from the time of the granting of the franchise within which to make application to the Public Service Commission for permission to exercise the franchise. How long it would take to get a decision from such commission no one can tell, and then the purchaser was given three months after such permission was obtained in which to commence to supply the city and its inhabitants with electricity, which would be ample time to enable a bidder, perchance, to secure and develop another water power, making it into an electricity-producing plant, or, at least, establish a plant for the generating of electricity by the use of coal. Therefore the proposed franchise cannot be justified upon the theory that the city is immediately to have the benefit of electricity under the provisions thereof.

There is no legitimate reason why either of the provisions adverted to should be contained in the proposed franchise and thus prevent competitive bidding for the same, thereby nullifying the express provisions of the charter. As was said in the case of Grace v. Fobes, as Mayor of the City of Syracuse, et al., 64 Misc. 130, at page 136, 118 N. Y. Supp. 1062, at page 1066:

"The statute requires an opportunity for competition; and, where this opportunity is given in form only and not in fact, its spirit is violated."

It is alleged in the moving papers that the proposed franchise is worth more than $2,000, and such allegation is not denied. The only way that its value can be actually determined is by competitive bidding—the method provided by the charter.

We think it is clear that the officers of the city of Fulton, when they determined to supply said city with electricity, should have prepared a franchise in such form as that any corporation could bid for the same and should not have so framed it as to exclude all bidders, except the Niagara-Oswego Power Company. The franchise proposed to be granted is practically exclusive. Under it poles may be erected along streets, conduits dug, and wires strung, and it is hardly conceivable that another plant for supplying electricity would be permitted to be installed.

In the case of Smith v. Syracuse Improvement Co., 161 N. Y. 484, 55 N. E. 1077, bids were received for paving a street "with vitrified brick, manufactured by the New York Brick & Paving Company, of Syracuse, N. Y." That, of course, limited the bidding for such contract to one concern, the New York Brick & Paving Company, and the Court of Appeals held that the proceeding to award such contract was void because in violation of the statute.

In the case at bar the proposed franchise, as we have seen, practically provides that it shall be awarded to the Niagara-Oswego Power Company, when for aught that appears other corporations are ready to bid for the same if electricity manufactured by them may be used equally with the electricity generated at Niagara Falls.

We conclude that the order appealed from should be reversed, and the preliminary injunction reinstated, with $10 costs and disbursements.

Order reversed, with $10 costs and disbursements, and motion to reinstate injunction granted, with $10 costs. All concur; ROBSON, J., in result only.